NOTICE

Decision filed 02/04/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241090-U

NO. 5-24-1090

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| BRANDY L. BARTER-STORM and CHRISTOPHER STORM, | ) ) ) | Appeal from the Circuit Court of Champaign County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 22-LA-62 |
| COUNTRY MUTUAL INSURANCE COMPANY, JOHN KENT INSURANCE AND FINANCIAL SERVICES, LLC, and JOHN KENT, | ) ) ) ) | Honorable Jason M. Bohm, |
| Defendants-Appellees. | ) | Judge, presiding. |

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The record demonstrates the existence of genuine issues of material fact precluding summary judgment on plaintiffs' claims alleging breach of contract, bad faith claims practices, and negligence. The summary judgment entered in favor of the defendants on counts I, II, IV, and V of the amended complaint is vacated, and the cause is remanded for further proceedings consistent with this order.

¶ 2    The plaintiffs, Brandy L. Barter-Storm and Christopher Storm,[1] filed a complaint alleging breach of a home insurance contract and bad faith claims practices against Country Mutual Insurance Company (Country Mutual), and negligence against Country Mutual, John Kent

---

[1]Brandy L. Barter-Storm and Christopher Storm are referred to as "the plaintiffs" collectively and by first name when referred to individually.

Insurance and Financial Services, LLC, and John Kent. The circuit court entered summary judgment in favor of the defendants on all counts and denied the plaintiffs' motion to file an amended complaint to add a count for estoppel. The plaintiffs appeal the summary judgment orders entered in favor of Country Mutual and John Kent and the order denying their motion to amend the complaint.[2] We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4      In July 2020 the plaintiffs were employed as high school teachers. They owned a home in Urbana, Illinois, and five investment properties in Mattoon, Illinois. The Urbana residence and all five investment properties were insured by Country Mutual. This case involves one of those properties. It was the former residence of the plaintiffs—a single-family home located on Western Avenue in Mattoon.

¶ 5      The plaintiffs moved out of the Western Avenue residence rather quickly in July 2020 relocating to Urbana to pursue new teaching opportunities in the Champaign-Urbana area. After moving from the Western Avenue residence, they began renovating that property to prepare it for sale. During the 16 months that followed, the property was unoccupied and renovations and repairs were done primarily on weekends. In the early morning hours on November 15, 2021, a fire broke out at the Western Avenue property and caused major damage. Mattoon Fire Department officials determined that the fire started when a pile of cloths used to stain the home's hardwood floors spontaneously combusted. At the time of the fire, Scott State Bank had a mortgage on the property, and the bank was named as the mortgagee on the declarations page of the Country Mutual policy.

---

[2]Pretrial discovery revealed that John Kent Insurance and Financial Services, LLC was formed in July 2022 and that the entity did not exist at the time of the alleged negligence. Summary judgment was entered in favor of John Kent Insurance and Financial Services, LLC. That order was not appealed and is not before us.

¶ 6    The plaintiffs contacted their Country Mutual representative, John Kent, to report the loss. They filed a claim under their Country Mutual policy. Country Mutual denied the claim, asserting the plaintiffs' insurance policy on the Western Avenue property had been cancelled effective July 27, 2021, due to nonpayment of the premium. The plaintiffs notified Country Mutual that neither they, nor Scott State Bank, had received a cancellation notice. They demanded Country Mutual comply with its obligations under their insurance policy. Country Mutual declined.

¶ 7    On May 20, 2022, the plaintiffs filed a complaint against Country Mutual. In count I, the plaintiffs alleged Country Mutual breached its contractual obligation in that it refused to provide coverage for the fire loss despite the plaintiffs' repeated demands for performance. In count II, the plaintiffs alleged Country Mutual committed bad faith claims practices in violation of section 154.6(d) of the Illinois Insurance Code (215 ILCS 5/154.6(d) (West 2020)). The plaintiffs alleged that Country Mutual acted in bad faith in that Country Mutual terminated coverage without proper notice to the plaintiffs or Scott State Bank, and that Country Mutual's agent, John Kent, told Brandy that a collection notice demanding payment for a past due premium was a mistake and could be ignored. The plaintiffs claimed that if Country Mutual or Kent had properly notified them that the policy on the Western Avenue property had been cancelled for nonpayment of the premium, they could have made the payment within the time allotted to reinstate the policy or obtained replacement coverage. The plaintiffs further claimed that if Country Mutual had notified Scott State Bank of the intent to cancel the insurance coverage on the Western Avenue property, the bank would have obtained force-placed coverage so that the property would have been insured to the extent of the outstanding balance on the mortgage.

¶ 8    In May 2023 the plaintiffs filed an amended complaint and added negligence counts against Kent and Country Mutual. In count IV of the amended complaint, the plaintiffs alleged that Kent

was the agent of Country Mutual, that Kent represented the Storms in procuring insurance for various residential properties, including the Western Avenue property, and that Kent failed to act with reasonable care to assist the plaintiffs in maintaining coverage on the Western Avenue property. The plaintiffs further alleged that Kent was negligent in one or more of the following ways: he failed to notify the plaintiffs that Country Mutual cancelled the insurance coverage on the Western Avenue property; he told Brandy that a collection notice for a past due premium was a mistake and could be ignored; he failed to procure reinstatement coverage on the Western Avenue property; and he failed to procure replacement coverage on the Western Avenue property. In count V, the plaintiffs alleged that Kent was an agent engaged by Country Mutual to procure insurance business on its behalf, that Country Mutual was responsible for Kent's activities in representing the interests of and procuring insurance for the plaintiffs, and that Country Mutual was responsible for Kent's negligent acts and omissions as alleged in count IV.

¶ 9 Kent filed an answer and denied the allegations of negligence against him. Country Mutual filed a separate answer, denying liability, along with affirmative defenses. In its affirmative defenses, Country Mutual alleged that it properly notified the plaintiffs that the insurance coverage would terminate on July 27, 2021, due to nonpayment of premiums. Country Mutual further alleged that Kent was in the business of selling Country Mutual insurance products rather than providing services to prospective insureds and that Kent's only duty to the plaintiffs was to place insurance as requested by them. The plaintiffs denied Country Mutual's affirmative defenses.

¶ 10 The parties proceeded with the pretrial discovery of documents. They took discovery depositions of Brandy, Kent, and Ron DeLong, who was Country Mutual's designated corporate representative. Tod Jeffers, President of Scott State Bank, and Lisa Kirkwood, an employee of Scott State Bank, were also deposed. The background facts were largely undisputed, but the parties

4

had differing views regarding the propriety of the cancellation of the insurance coverage on the Western Avenue property.

¶ 11      In 2016, the plaintiffs purchased the Western Avenue property with a loan from Scott State Bank, and they obtained homeowners insurance coverage for that property from an agent of Country Mutual. At that time, the insurance premium and taxes were paid out of an escrow account. In 2018, Country Mutual assigned Kent as the plaintiffs' account representative. On December 14, 2020, the insurance policy on the Western Avenue property lapsed due to nonpayment of the renewal premium. When Brandy learned of the lapse, she asked Kent to help her with reinstatement. With Kent's assistance, the policy was reinstated as of January 27, 2021. On that same day, Brandy executed a document authorizing the automatic payment of the monthly premium through Brandy's debit card. The change was reflected on an updated declarations page. Brandy did not recall making the change from escrow to the automatic payment, but she acknowledged that it was made.

¶ 12      On March 20, 2021, Country Mutual sent an email to Brandy indicating that her monthly payment would be automatically taken from her account April 8, 2021. The email referenced the plaintiffs' account number but did not identify the address of the insured property or the policy number associated with the insured property. Country Mutual also mailed a premium notice of the upcoming automatic payment date of April 8, 2021, on the Western Avenue property. The notice, dated March 22, 2021, was addressed to Brandy at the residence in Urbana. On April 8, 2021, Country Mutual sent an email to Brandy to notify her that the automatic payment from the card on file "did not go through" and that the customer should take steps to pay the bill and update the payment information. The email referenced the plaintiffs' debit card number and the Country Mutual account number, but it did not identify the address of the insured property or the associated

5

policy number. Country Mutual sent a notice of cancellation, dated April 15, 2021, advising that the premium payment had not been received, and that if not paid, the policy would terminate on April 27, 2021. The notice was addressed to Brandy at the Urbana address.

¶ 13    Brandy testified that she recalled receiving the cancellation notice dated April 15, 2021. She also received a letter from Scott State Bank, advising her that the bank had been notified of the impending cancellation of insurance coverage on the Western Avenue property. Brandy paid the premium due before the termination date. A new declarations page was issued indicating the policy was reinstated effective April 27, 2021. In May 2021 and June 2021 Country Mutual sent email notices to Brandy indicating receipt of the premium payments for those months.

¶ 14    Country Mutual sent a copy of a premium notice, dated June 21, 2021, indicating that the premium payment for the Western Avenue property would be automatically debited on July 8, 2021. The notice was addressed to Brandy at the residence in Urbana. Unlike the prior months, there is no evidence that Country Mutual sent an email notification that the next premium payment would be automatically withdrawn on July 8, 2021. As part of its evidence, Country Mutual produced a copy of an email to Brandy, dated July 8, 2021, indicating that the payment from the card on file "did not go through," and that the customer should take steps to pay the bill and update the payment information to maintain coverage. This email referenced the plaintiffs' Country account number and debit account number, but it did not identify the address of the insured property or the associated policy number. In addition, Country Mutual produced a notice of cancellation, dated July 15, 2021, advising that the billed premium had not been received and that if not paid, the policy would terminate on July 27, 2021. The notice was addressed to Brandy at the Urbana address. A box in the upper right corner of the notice indicated a coverage termination date of July 27, 2021, "at YOUR address." The notice identified the policy number and the account

number, but it did not identify the address of the insured property. Country Mutual also produced a premium notice, dated July 28, 2021, and final billing notices dated August 12, 2021, and August 23, 2021, indicating that there was an unpaid balance for coverage already provided. Each notice was addressed to Brandy at the Urbana address. On or shortly before September 2, 2021, Country sent the account to a collection agency named Afni, Inc.

¶ 15    In her deposition, Brandy testified that the Western Avenue property had been insured by Country Mutual since 2016, and that Kent had been their representative since 2018. When Brandy and Christopher moved out of the Western Avenue residence in July 2020 Brandy notified Kent that the Western Avenue property would not have renters and would be put up for sale after renovations were completed.

¶ 16    Brandy testified that she recalled receiving the cancellation notice from Country Mutual, dated April 15, 2021, in the mail. She did not recall receiving the email notice, dated April 8, 2021, advising that the automatic premium payment did not go through. Brandy did not know why the automatic payment was unsuccessful. She stated that her debit card may have expired and she had not yet received a new card. Brandy recalled that she received a letter from Lisa Kirkwood at Scott State Bank around that time. Kirkwood advised Brandy that the bank had been notified of the impending cancellation. Brandy testified that she took some action and the policy was reinstated. Country Mutual issued a new declarations page indicating that the policy had been reinstated effective April 27, 2021. Brandy either sent the new declarations page showing that coverage had been reinstated to the bank, or she asked Kent to notify the bank of the reinstatement.

¶ 17    Brandy reviewed copies of the premium notice dated June 21, 2021, indicating that the premium payment would be automatically debited on July 8, 2021, and the email dated July 8, 2021, indicating that the payment from a debit card did not go through. Brandy did not recall

7

receiving either document. She would have paid the amount owed had she received these notices. Brandy testified that she did not receive the cancellation notice dated July 15, 2021. She did not see that document until after the fire. Brandy noted that Scott State Bank did not receive a copy of the cancellation notice dated July 15, 2021. She thought this showed that the cancellation notices were never mailed. Brandy could not speculate about why she received the April 2021 notice and not the July 2021 notice.

¶ 18    Brandy testified that she received a notice from a collection agency, Afni, Inc., sometime in October 2021. She identified the notice demanding a payment of $329.97, owed to Country Mutual. She did not recall receiving any billing notices from Country Mutual seeking a payment of $329.97 owed for prior coverage. On October 30, 2021, Brandy emailed Kent to advise him that she received a collection notice regarding a missed premium payment. She attached a copy of the collection notice and asked Kent for help. Brandy testified that Kent left a voicemail message indicating that the bill had been paid, and she could ignore the mailing on that. Kent gave no indication there was a problem with the account, so she thought everything was fine. Brandy's bank records showed that a payment of $329.97 had been made to Country Mutual on September 7, 2021.

¶ 19    After the fire, Brandy filed a claim with Country Mutual. In a letter dated November 16, 2021, Country Mutual stated that the policy had been cancelled effective July 27, 2021, and denied the claim. Brandy contacted Kent. Kent initially indicated that perhaps something could be done. A few days later, he said nothing could be done. Brandy testified she had no reason to ask Kent to do anything with the policy between July 15, 2021, and November 14, 2021, because she believed the policy on the Western Avenue property was in force. Brandy did not meet personally with Kent at his office because this was during "Covid" and no one was meeting in person.

8

¶ 20    John Kent testified that he sold property and casualty insurance as a captive agent for Country Mutual. A copy of a "Provisional Agent's Agreement" between Kent and Country Mutual, with an effective date of October 1, 2018, was attached to an affidavit executed by Kent in June 2024. The agreement indicated that Kent was an independent contractor authorized to sell Country Mutual insurance products and it outlined the agreements and conditions of the relationship.

¶ 21    Kent testified that he received copies of the cancellation notices sent to the plaintiffs in April 2021 and July 2021. Kent did not contact the plaintiffs about these notices because it was not his practice to notify customers that their policies had lapsed or were cancelled and it was not a requirement of his contract with Country Mutual. Kent explained that his office contacted customers when they were on "the pre-lapse list" to let them know they were "in danger." "At some point, you just got to cut your losses and move on." Kent stated he had no contact with the plaintiffs from the date the policy was cancelled on July 27, 2021, until October 30, 2021. Kent recalled receiving an email from Brandy on October 30, 2021. In the email, Brandy asked about a collection notice that she received from Afni, Inc. regarding a missed payment for insurance coverage. Brandy indicated that she was confused. "Am I missing a payment on something or did my bank miss a payment from escrow? Please help." The collection notice was attached to the email. Kent testified that the collection notice referred to a terminated policy with an outstanding balance of $329.97. Kent called Country Mutual's customer service center and was informed that the amount noted in the collection notice had been paid. Kent phoned Brandy and left the following voice mail message:

> "Hey Brandy. John Kent sorry probably didn't wait long enough to call you, you're probably still at school. Give me a holler back. I got your email, looks like you did pay that, so that, you can ignore the mailing on that. But, we need to kinda figure out what's

9

going on with your [Western Avenue] Account. I just wanna know who's paying that, whether that's you or the bank. Yeah, give me a holler when you have a chance telephone number ***. Thanks."

¶ 22 Kent confirmed the series of emails that followed. On November 6, 2021, Brandy emailed Kent.

"Sorry I did not get back to you this week John—crazy week at school. I'm glad to hear this collection statement is an error. Do you know if it has been reported as such to the collection agency? Or will this still show up on my credit report?

Also, it should be my bank paying for the home insurance on *** Western Ave. in Mattoon. They paid the previous balance, correct? Can you reach out to them about any non-payment?"

¶ 23 On November 8, 2021, Kent responded.

"No worries. I don't believe it will show up. We did not receive a payment on that house. I can reach out to them but out of curiosity is that house currently rented or is it vacant."

¶ 24 On November 9, 2021, Brandy emailed Kent again.

"Great. The bank just paid the taxes on the house so I know it is in escrow. The house is empty while we finish renovations."

¶ 25 Kent testified Brandy's email regarding the collection notice was not his first notice that there might be a problem with coverage on the Western Avenue property. Kent knew the policy had been terminated for nonpayment because he "receives a duplicate of what Brandy receives." Kent assumed that both Brandy and the bank would have received the notice of cancellation. Kent stated that if payment arrangements had been made within 60 days from the effective date of

10

cancellation, it could have been reinstated. Kent further stated that because the Western Avenue property was vacant, it was not eligible to be insured on a replacement policy. He acknowledged that he could have contacted Country Mutual's brokerage arm about obtaining coverage, but he was not asked to do that. Kent testified that he had no further communications prior to the fire on November 15, 2021. Kent noted that Brandy called him to report the fire and to make a claim. His office could not make the claim because the policy was inactive, so he called Country Mutual to report it.

¶ 26 Tod Jeffers was the president of Scott State Bank at the time of these events. Jeffers approved the loan on the Western Avenue property. Jeffers testified that the bank had a "core system" that kept track of all bank's loans, deposit accounts, and customers. Loan officers could use the system to look up a borrower's file and determine whether the insurance was active and the dates of renewal. Jeffers explained that in a situation where the bank received notice of a policy lapse or an impending cancellation due to nonpayment of a premium, the bank's loan processer would send a letter to the borrower or call the borrower to take care of the matter. It was important for the bank to document insurance coverage because the property is collateral for the loan and needs to be protected.

¶ 27 Jeffers reviewed the records of the plaintiffs' loan on the Western Avenue property. He noted that in April 2021 the bank received a notice from Country Mutual about a failure to pay an insurance premium. The bank contacted the plaintiffs about the matter and subsequently received a notice of reinstatement on May 28, 2021. Jeffers testified that unlike the prior occasion, the bank did not receive a copy of the letter from Country Mutual, dated July 14, 2021, indicating that the insurance policy on the Western Avenue property had been cancelled and that the coverage would

11

terminate on July 29, 2021.[3] He noted that the bank's records indicated that there was coverage until December 2021. Jeffers stated that the bank was a named insured on the policy and was entitled to notice of the intent to terminate coverage. If the bank had received notice of the impending termination, the bank would have immediately contacted the plaintiffs, and if the plaintiffs were unable to reinstate the policy or obtain replacement coverage, the bank would have force-placed coverage to protect its interests.

¶ 28    Lisa Kirkwood was employed by Scott State Bank as a credit card administrator. She assisted with the processing of mortgage loans. One of her duties was to keep track of insurance on mortgaged properties. Kirkwood built the loan file on the Western Avenue property. Kirkwood reviewed a copy of the letter dated July 14, 2021, from Country Mutual to Scott State Bank, notifying the bank that the policy would be terminated on July 29, 2021. Kirkwood testified that she had never seen the letter and it was not in the bank's files. Kirkwood stated that the letter was unlike any formal notice she had ever received from Country Mutual. She noted that it did not identify the Western Avenue property. If she had received that letter, she would have assumed the insurance had been cancelled on the Urbana property because that was the address listed in the notice. Kirkwood testified that if the bank had received a notice of the upcoming cancellation of coverage on the Western Avenue property, she would have contacted the insurer to determine whether the premium had been paid. In addition, she would have contacted the plaintiffs. If the plaintiffs were unable to reinstate the policy or obtain a new policy, the bank would force-placed coverage on the property.

---

[3]A coverage termination date of July 29, 2021, appears in the July 14, 2021, letter to Scott State Bank. A coverage termination date of July 27, 2021, appears in the July 15, 2021, cancellation notice addressed to Brandy.

¶ 29　Ron DeLong was designated by Country Mutual as the corporate representative most knowledgeable about its property and casualty operations. DeLong worked in Country Mutual's home office in Springfield, Illinois. His duties included making sure Country Mutual's forms complied with state laws and regulations. DeLong testified that he reviewed the documents specifically around the dates that the cancellation notices were sent to the plaintiffs and to the mortgage company in preparation for his deposition. He stated that he was "here to testify to the mailings that we sent to the client and to the mortgage company." DeLong noted that he was not involved in the investigation of the fire loss claim for the Western Avenue property. He was not aware of all the facts surrounding the claim itself, and he had no knowledge of email exchanges or calls between Kent and Brandy.

¶ 30　DeLong testified that Country Mutual had an automatic system set up to generate cancellation notices. DeLong stated that cancellation notices are driven by the lack of premium payment. He referred to the premium notice dated June 21, 2021, indicating that an automatic payment in the amount of $381.06 would be made on July 8, 2021, and an email notice dated July 8, 2021, indicating that the payment was unsuccessful. Delong testified that the client's failure to respond to those premium notices "induced us to going into a mid-term cancellation." Delong then also referenced the cancellation notice dated July 15, 2021, with an effective termination date of July 27, 2021. He testified that Country Mutual had "records" showing the cancellation notice was sent "certificate of mail" to the client's last known address. He noted that a certificate of mail does not require a receipt. DeLong stated that a certificate of mailing is "a validation process that we go through the post office that ensures that there's a register that shows that this client was mailed this document on a given date." DeLong admitted he had no personal knowledge of whether the notice was in fact sent to Brandy. DeLong recognized that Scott State Bank was named as the

13

mortgagee on the declarations page that accompanied the insurance policy and Country Mutual was required to give the mortgagee notice of a mid-term cancellation. DeLong reviewed a letter dated July 14, 2021, addressed to Scott State Bank. DeLong testified that it was a standardized letter that he believed would have come out of Country Mutual's home office. The letter was not on Country Mutual letterhead. The effective termination of coverage date on the letter to the bank was July 29, 2021, not July 27, 2021.

¶ 31    DeLong testified that Country Mutual is required by Illinois law to give 10-days' notice of a mid-term cancellation to both the mortgage company and the client at the last known address, and that it complied with this requirement. DeLong also testified that Country Mutual complied with the cancellation provisions in a mandatory endorsement to the insurance policy. DeLong concluded that Country Mutual sent cancellation notices to the client and the mortgage company, and those notices showed that Country Mutual provided a few more than the minimum 10-day notice. He stated that Country Mutual followed its usual and customary practice in preparing and processing this particular mailing. DeLong saw no evidence that any mailing had been returned as undeliverable. He believed Country Mutual kept a record when such an event occurred, but he did not know how that worked. When asked whether it was more likely true than not true that Brandy and Scott State Bank did not receive the cancellation notices given that neither acted in a manner consistent with receiving a cancellation notice, DeLong refused to speculate. DeLong concluded that Brandy and the mortgagee were given proper notice of cancellation. DeLong based his testimony on his review of Country Mutual's records and those of the post office.

¶ 32    Country Mutual produced a certified copy of the Home Insurance Policy that DeLong referenced in his deposition. Item D of the General Policy Conditions addressed policy

14

cancellations. It was amended pursuant to an Illinois Amendatory Endorsement to the policy. The amended section provided:

"2. 'We' may cancel this policy as provided in this condition. The cancellation notice, together with 'our' reason for cancellation, will be mailed to 'you' at 'your' last mailing address known by 'us' and the last known mortgagee or lienholder at the last mailing address known by 'us' and 'we' will obtain a certificate of mailing. A copy of the notice will also be sent to the financial representative or broker.

\* \* \*

b. When this policy has been in effect for 60 days or more, or it is a renewal with 'us,' 'we' may cancel:

(1) For nonpayment of premium;

\* \* \*

c. If 'we' cancel for nonpayment of premium 'we' will let 'you' know of 'our' action at least 10 days before cancellation takes effect."

Another section of the policy addressed additional interests, including standard mortgage clauses. This section provided, "If 'we' decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or non-renewal takes effect." The definition section of the policy provided that " 'you' and 'your' refer to the person shown in the Declarations as INSURED and that person's spouse if a resident of the same household. 'We,' 'us' and 'our' refer to the company providing this insurance."

¶ 33    In July 2024 Kent filed a motion for summary judgment, along with a supporting memorandum, and exhibits. Kent argued that he was an agent of Country Mutual and not an insurance broker, and that as an agent of Country Mutual, he had no duty to the plaintiffs to notify

15

them of the cancellation notice issued in July 2021. Kent further argued that his duties to the plaintiffs were limited to those prescribed in section 2-2201 of the Code of Civil Procedure (Code) (735 ILCS 5/2-2201 (West 2022)). Kent claimed that under section 2-2201, he had a statutory duty to exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by an insured or proposed insured, and that he had no duty to procure reinstatement of coverage or replacement coverage where the plaintiffs did not specifically request Kent to procure that coverage.

¶ 34    Country Mutual filed a separate motion for summary judgment and supporting memorandum. Country Mutual adopted Kent's arguments and attached his motion, memorandum, and exhibits in support of its motion. Country Mutual also argued that it satisfied its responsibilities under the insurance policy and under Illinois law to notify the plaintiffs that the insurance policy on the Western Avenue property had been terminated due to nonpayment of premiums and that it had no contractual duty to provide coverage for the fire loss. Kent and Country Mutual relied upon several documentary exhibits along with excerpts from the deposition and affidavit of Kent and excerpts from the depositions of Brandy, DeLong, and Jeffers in support of their respective motions for summary judgment.

¶ 35    The plaintiffs filed a response in opposition to the defendants' motions for summary judgment. The plaintiffs claimed there was evidence to show that Country Mutual did not give proper notice of cancellation of the insurance coverage to the plaintiffs or the bank. They argued that Country Mutual's reliance upon DeLong's testimony regarding the company's usual business practices and a certificate of bulk mailing was not sufficient to establish proof of mailing of the specific cancellation notices at issue. The plaintiffs presented testimony to show that neither Brandy nor Christopher received the July 2021 cancellation notice in the mail, and that Brandy

16

first saw a copy of the notice after the fire. The plaintiffs argued that this evidence, when coupled with the testimony of two representatives of Scott State Bank, created a reasonable inference that the notices were not properly mailed. The plaintiffs also argued that Kent provided misleading information about the status of the coverage on the Western Avenue property, leading the plaintiffs to believe that the insurance coverage was still in effect and that Kent elected not to assist the plaintiffs in obtaining replacement coverage. Thus, the plaintiffs concluded there were genuine issues of material fact, precluding summary judgment. The plaintiffs relied upon excerpts from the discovery depositions of Brandy, Kent, DeLong, Jeffers, and Kirkwood in support of their opposition to summary judgment.

¶ 36    After considering the written briefings and the arguments of counsel, the trial court granted summary judgment in favor of the defendants on all counts of the amended complaint. The written judgment was entered September 5, 2024. On September 18, 2024, the plaintiffs filed a motion to set aside the judgment and to amend their complaint to add a new count alleging estoppel. The defendants objected. The trial court denied the plaintiffs' motion. This appeal followed.

¶ 37                                II. ANALYSIS

¶ 38    On appeal, the plaintiffs claim the trial court erred in entering summary judgment for the defendants. The plaintiffs argue there were genuine issues of material fact as to whether Country Mutual gave proper notice of cancellation of the policy on the Western Avenue property to the plaintiffs and to Scott State Bank.

¶ 39    Summary judgment is proper if the pleadings, depositions, and admissions on file, together with any affidavits, when viewed in the light most favorable to the nonmovant, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022); *Outboard Marine Corp. v. Liberty Mutual Insurance*

17

*Co.*, 154 Ill. 2d 90, 102 (1992). The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment is a drastic means of disposition of litigation and, therefore, should be granted only if the movant's right to judgment is clear and free from doubt. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993). In determining whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opposing party. *Adams*, 211 Ill. 2d at 43. A triable issue precluding summary judgment exists where the material facts are disputed or where the material facts are undisputed but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. The trial court's decision to grant summary judgment is reviewed *de novo*. *Adams*, 211 Ill. 2d at 43.

¶ 40    Section 143.14(a) of the Insurance Code provides in pertinent part:

> "(a) No notice of cancellation of any policy of insurance, to which Section 143.11 applies, shall be effective unless mailed by the company to the named insured at the last mailing address known by the company. The company shall maintain proof of mailing of such notice on a recognized U.S. Post Office form or form acceptable to the U.S. Post Office or other commercial mail delivery service. Notification shall also be sent to the insured's broker, if known, or the agent of record, if known, and to the mortgagee or lien holder listed on the policy." 215 ILCS 5/143.14(a) (West 2022).

¶ 41    Section 143.14(a) requires that the insurance company mail a notice of the cancellation to the insured, and to other parties, such as the mortgagee. *Ragan v. Columbia Mutual Insurance. Co.*, 183 Ill. 2d 342, 351 (1998). The insurance company is also required to maintain proof of mailing, and there is no alternative method for proving compliance with the proof of mailing

18

requirements. *Ragan*, 183 Ill. 2d at 351. While the statutory purpose is to protect the insured from cancellation of his insurance without his knowledge, the legislature sought to strike a balance between the interest of the insured in being notified of the cancellation and the burden that would be placed on the insurance company to prove receipt by the insured. *Ragan*, 183 Ill. 2d at 351. Therefore, the statute requires the insurance company to show proof of mailing, rather than proof of receipt by the insured. *Ragan*, 183 Ill. 2d at 351.

¶ 42    In this case, Country Mutual relied upon the testimony of Ron DeLong, its designated representative, to show that it complied with the statutory requirements of section 143.14(a) and the provisions of its policy. DeLong testified that Country Mutual had records showing the notices were sent to the plaintiffs and Scott State Bank, but he had no personal knowledge beyond his review of those notices. DeLong stated that an automatic system generates cancellation notices, but he offered no testimony about how those notices were mailed beyond vague references to records of the post office.

¶ 43    Country Mutual also relied upon three documents to support its contention that cancellation notices were mailed to Brandy and Scott State Bank. Country Mutual offered two Certificates of Bulk Mailing from the United States Postal Service. The Certificates of Bulk Mailing indicate that the mailing contained 488 mailpieces associated with 13 different job numbers. The certificates also indicate that the mailpieces were to be mailed for Country Mutual by Fiserv Output Solutions, from a zip code in Stafford, Texas. The "Postmaster's Certification" appears in a box at the bottom left corner of the certificate and provides:

> "It is hereby certified that the number of mailpieces presented and the associated postage and fee were verified. This certificate does not provide evidence that a piece was mailed to a particular address."

19

This certification merely evidences pre-payment of postage and fees. Country Mutual offered no testimony identifying the role of Fiserv Output Solutions in the cancellation process. There was no testimony from Fiserv Output Solutions or anyone else linking the bulk mailing to the cancellation notice purportedly mailed to Brandy.

¶ 44    Country Mutual produced a 10-page document and asserted that this document showed the July 15, 2021, cancellation notice was mailed to Brandy pursuant to the bulk mailing referenced above. The 10-page document contains a series of columns and rows. There appear to be headings at the top of each column, however, all of those headings are blacked out. The entire content of the 10-page document is blacked out, save for one row, midway down page eight, that contains Brandy's name and residence address in Urbana, followed by groups of letters and numbers. Country Mutual offered no testimony as to the source, nature, and meaning of this document. There was no testimony that linked this document to the Certificate of Bulk mailing.

¶ 45    In addition, Country Mutual offered a "USPS PostalOne!" document as evidence that a cancellation notice was mailed to Scott State Bank. This document contains information regarding a batch mailing from Bryan, Texas. This mailing included 2,263 pieces of mail. The mailing agent is identified as XPEDIENT MAIL, and the mail owner is identified as INSVISTA LLC. Once again, DeLong offered no testimony regarding the respective roles of XPEDIENT MAIL and INSVISTA LLC, or the relationship of those entities to Country Mutual. Likewise, no representative of those entities testified regarding the bulk mailing process.

¶ 46    In sum, Country Mutual simply deposited these documents into the record without laying any foundation and without offering any testimony regarding the relevance and purpose of the documents to the issues in this case. Country Mutual did not satisfy its burden to show compliance with the requirements of section 143.14(a) or its own cancellation policy. Country Mutual's failure

20

of proof, coupled with the testimony that neither the plaintiffs nor Scott State Bank received the July 2021 cancellation notice, demonstrates the existence of a genuine issue of material fact as to whether Country Mutual provided proper notice of the cancellation to the plaintiffs and to the bank. In addition, there is no evidence in the record that Country Mutual provided any notice of cancellation to Christopher Storm. According to the plain language of Country Mutual's policy, the cancellation notice and reason for cancellation "will be mailed to 'you' at 'your' last mailing address." Notably, the policy definitions provide that "you" and "your" refer to the named insured and "*that person's spouse if a resident of the same household.*" It is undisputed that Christopher was the spouse and a resident of the household of the named insured. Whether Country Mutual provided proper notice to Christopher remains a genuine issue of material fact. Accordingly, the trial court erred in entering a summary judgment in favor of Country Mutual on count I and count II of the amended complaint.

¶ 47     Next, we consider whether the trial court erred in granting summary judgment in favor of Kent and Country Mutual on the plaintiffs' negligence claims. In counts IV and V of the amended complaint, the plaintiffs claimed that Country Mutual's agent, John Kent, was negligent in that he told Brandy that a collection notice for a past due premium was a mistake and could be ignored, and he failed to tell Brandy that the Western Avenue policy was no longer in force and that she needed to obtain replacement coverage.

¶ 48     Section 2-2201 of the Code (735 ILCS 5/2-2201 (West 2022)) provides that an insurance producer "shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured." Under the statute, a duty of ordinary care arises only after coverage is requested. See *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 37. Although section 2-2201 does not define "insurance producer," the Illinois

21

Supreme Court determined that the definition of "insurance producer" in the Illinois Insurance Code should be given substantial weight in defining that term. *Skaperdas*, 2015 IL 117021, ¶¶ 30, 43. Section 500-10 of the Insurance Code defines insurance producer as "a person required to be licensed *** to sell, solicit, or negotiate insurance." 215 ILCS 5/500-10 (West 2022). Given that definition, our supreme court has concluded that anyone who is required to be licensed to sell, solicit, or negotiate insurance, including agents and broker, are considered insurance producers. *Skaperdas*, 2015 IL 117021, ¶ 43. The duty of ordinary care in section 2-2201(a) is not based on a fiduciary relationship between an insurance producer and the insured and may be applied to any insurance producer regardless of whether a fiduciary or agency relationship exists. *Skaperdas*, 2015 IL 117021, ¶ 26

¶ 49       In this case, John Kent was the agent for Country Mutual and the plaintiffs' insurance representative. Thus, Kent qualified as an insurance producer and owed a duty to exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured. 215 ILCS 5/2-2201 (a), (d) (West 2022); *Skaperdas*, 2015 IL 117021, ¶¶ 42-43. Kent argued that he did not contact Brandy about the July 2021 cancellation notice because it was not his practice and he was not required to do so under his contract with Country Mutual. He also argued that he was not required to locate alternate coverage for the Western Avenue property because he was not asked to do so.

¶ 50       Under Kent's Provisional Agent's Agreement with Country Mutual, Kent agreed to sell, solicit, and negotiate the company's insurance products "in a manner you determine to be most effective for fulfilling your obligations under the Agreement," and to "undertake whatever actions you deem appropriate and necessary, consistent with all applicable insurance laws and regulations to accomplish the servicing of all policyholders, whether assigned to you or resulting from policies

22

produced by your marketing activities." Thus, Kent had a duty to exercise ordinary care and skill in procuring coverage in accordance with section 2-2201 and his contract with Country Mutual.

¶ 51    According to the record, when Brandy learned of the collection notice in October 2021 she emailed Kent and asked for his help. She asked him whether she or the bank missed a payment. Kent looked into the matter and left Brandy a voice mail message. In his message, Kent stated that it looked like Brandy paid that and could ignore the mailing on that. "But, we need to kinda figure out what's going on with your [Western Avenue] Account. I just wanna know who's paying that, whether that's you or the bank." Brandy sent a follow-up email stating that the bank should be paying for the home insurance on Western Avenue, and she asked him to reach out to the bank about any nonpayment. Kent responded, indicating that "we did not receive a payment" and that he could reach out to them. Brandy was not required to utter any specific magic words or phrases when seeking Kent's assistance in making sure there was coverage on the Western Avenue property. Based upon his voicemail and email responses, Kent undertook a duty to assist Brandy with the insurance coverage on the Western Avenue property. Kent agreed to contact the bank as requested, even though he knew that the policy on the Western Avenue property had terminated on July 27, 2021. Whether Kent's representations constituted a breach of his duty to act with ordinary care and skill of an insurance producer under the circumstances was a factual question for the trier of fact. Therefore, the trial court erred in entering summary judgment in favor of Kent and Country Mutual on count IV and count V of the amended complaint.

¶ 52    Finally, the plaintiffs claim that the trial court abused its discretion in denying their motion to amend the complaint to add a theory of estoppel. The record demonstrates that the plaintiffs filed a motion asking the court to vacate the summary judgment order entered September 5, 2024, and to grant the plaintiffs leave to amend their complaint to alleged estoppel as a further theory of

23

relief. The motion was filed after summary judgment had been entered disposing of all issues raised in the amended complaint, and the trial court found no valid basis to allow the amendment.

¶ 53   Section 2-616 of the Code (735 ILCS 5/2-616(a) (West 2022)) provides in pertinent part that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms, ***, adding new causes of action or defenses, ***, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim." In addition, the provisions of the Code "shall be liberally construed to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." 735 ILCS 5/1-106 (West 2022). In this case, we have vacated the summary judgment orders and remanded the matter for further proceedings. Given that, the plaintiff's claims remain at issue. Accordingly, the plaintiffs should be permitted to file a new motion to amend the complaint, and if the plaintiff elects to do so, the trial court should consider the motion anew.

¶ 54                                   III. CONCLUSION

¶ 55   For the reasons stated, the trial court's entry of summary judgment in favor of the defendants, Country Mutual and John Kent, on counts I, II, IV, and V of the complaint are vacated, and the cause is remanded for further proceedings consistent with this order.

¶ 56   Reversed and remanded.